IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIO A. PEREA,

   Plaintiff,

v.                   CIV No. 13-1020 GBW

CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*,

   Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse and Remand the Social Security Administration's (SSA) decision to deny Plaintiff disability insurance benefits. *Doc. 21*. For the reasons discussed below, the Court GRANTS Plaintiff's motion and REMANDS this action to the Commissioner for further proceedings consistent with this opinion.

### I. PROCEDURAL HISTORY

Plaintiff filed his Title II and XVI applications for disability insurance benefits and supplemental security income on March 31, 2011. Administrative Record (AR) at 21. He alleged a disability onset date of June 13, 2005, which was later amended to March 30, 2010, on the basis of "gastritis, liver damage, [and] arsonic [sic] poisoning." AR at 21, 37-38, 94. Plaintiff's claims were initially denied on August 8, 2011, and upon reconsideration on September 23, 2011. AR at 21, 94, 104.

1

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Myriam C. Fernandez Rice on February 28, 2012, in El Paso, Texas.  AR at 21, 33.  A vocational expert (VE), Nicole B. King, attended the hearing, as well as attorney Brandon Letnitch on behalf of Plaintiff.  AR at 21, 33.

The ALJ issued an opinion on June 6, 2012, finding Plaintiff not disabled within the meaning of the Social Security Act.  AR at 21-28.  In determining whether Plaintiff was entitled to benefits, the ALJ applied the sequential five-step analysis as required by SSA regulations.  20 C.F.R. §§ 404.1520, 416.920.  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request for review on September 19, 2013, finding no basis for altering the ALJ's decision.  AR at 1-2.

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the

evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. PLAINTIFF'S MEDICAL HISTORY

Plaintiff is a 55-year-old man alleging disability on the basis of gastritis, liver damage, hepatitis C, mild lumbar spondylosis, anxiety, and arsenic poisoning. AR at 23.

Plaintiff has been seeing his primary care physician, Eduardo Castrejon, M.D., of Solano Medical Associates, since 2004. AR at 421-22. In mid-2004, Plaintiff visited Dr. Castrejon, complaining of lower back pain, shoulder pain, fatigue, and allergies. AR at 421-22. Plaintiff saw Dr. Castrejon intermittently over the course of the next few years. Then, beginning in 2008 and continuing through 2011, Plaintiff began seeing Dr. Castrejon more frequently, as often as once a month.

In 2008, Plaintiff saw Dr. Castrejon for back pain, primarily in the lower part of his spine. AR at 373. Dr. Castrejon prescribed Plaintiff Lortab and Hydrocodone. AR

at 368.

In May 2009, Plaintiff returned to Dr. Castrejon, complaining that he was vomiting once a day and had numbness in his face and hands. AR at 361. Dr. Castrejon prescribed Lortab for pain and Phenergan for nausea. AR at 350. In September 2009, Plaintiff was tested for, and diagnosed with, hepatitis C. AR at 269, 272, 281, 398, 430. Tests performed at Solano Medical Associates also showed high enzyme levels for AST and ALT, which are indicative of liver problems.[1] AR at 386. At the end of September 2009, Dr. Castrejon referred Plaintiff to the Doña Ana County Health Office for evaluation and treatment for hepatitis C. AR at 276.

Plaintiff was examined at the Doña Ana County Health Office several times throughout 2009 and 2010, where he received basic education on hepatitis C and options for treatment. AR at 281. In late 2009, Plaintiff reported a history of gastritis, chronic liver disease and arsenic poisoning, and was assessed with chronic hepatitis C virus. AR at 278-79. He stated that he was taking Promethazine (Phenergan) for nausea and vomiting, and Hydrocodone-acetaminophen for pain. AR at 265, 274. Plaintiff reported chronic back pain at a level of 8 to 9 on a scale of 10. AR at 270. In a mental health assessment by the New Mexico Department of Mental Health, Plaintiff was noted as having an anxious mood, but he later denied any mood problems. AR at 257,

---

[1] AST (aspartate aminotransferase) is "an enzyme . . . [used as] a diagnostic aid in viral hepatitis . . . ." Stedman's Medical Dictionary 155 (Marjory Spraycar et al. eds., 26th ed. 1995). ALT (alanine aminotransferase) is an "enzyme . . ." used in clinical diagnosis of viral hepatitis . . . ." *Id.* at 41.

4

261.

In early 2010, Plaintiff complained of chronic lower back pain as well as pain related to his gastritis. AR at 255. He stated that he needed back surgery but was unable to afford it. AR at 255. The record reflects that Plaintiff never received hepatitis C therapy at the Doña Ana County Health Office because his existing health conditions prevented such treatment. *See* AR at 257.

Plaintiff continued to see Dr. Castrejon throughout 2010 and 2011. In 2010, Dr. Castrejon began prescribing Plaintiff Rynatan for allergies and Levsin for gastritis. AR at 326, 340. Plaintiff continued taking Lortab, Phenegran, Rynatan, and Levin during 2011. AR at 501, 503.

Dr. Castrejon's typed treatment notes from 2009 through 2011 repeatedly cite the same text: "Pain is aggravated by back motion, sitting, standing, lifting, bending, and twisting. [P]ain, muscle tension, or stiffness at the posterior belt line with occasional referred pain to the buttocks and/or posterior thighs; [b]owel and bladder function are preserved." AR at 320-358, 398, 402, 404, 501-531. He also often noted that Plaintiff "denie[d] any fever, chills, or malaise," and was "[f]eeling generally well." AR at 320-358, 398, 402, 404. Given these static records, there is little to indicate whether Plaintiff's symptoms improved or worsened over the course of his treatment with Dr. Castrejon.

Plaintiff also made a number of trips to the emergency department at Memorial Medical Center for abdominal pain and nausea from 2006 to 2011. In September 2006,

Plaintiff arrived at the emergency department with abdominal pain, but left before seeing a provider. AR at 458-59. He returned on October 10, 2006, complaining of abdominal pain and vomiting. AR at 460. He reported a history of gastritis. AR at 460-62. During the physical examination, the physician found that Plaintiff was "in mild distress" but did "not appear acutely ill." AR at 462. Plaintiff left the hospital before treatment was complete. AR at 461.

On February 10, 2007, Plaintiff again arrived at the Memorial Medical Center emergency department with abdominal pain that he described as the "worst pain ever (10/10)." AR at 470. Plaintiff was examined and diagnosed with abdominal pain, intractable vomiting, and a history of chronic gastritis. AR at 474. He was prescribed Prevacid, Donnatal Elixir, and Tigan. AR at 474.

In May 2007, Plaintiff received a CT scan of his abdomen and pelvis, which came back normal. AR at 317. He returned to Memorial Medical Center the following month, and the physician noted his impression of "normal acute abdominal series." AR at 315.

Plaintiff was next seen at the emergency department in November 2010, when he was diagnosed with abdominal pain, vomiting, and moderate hyperglycemia, and was prescribed Percocet and Pepcid. AR at 298, 313.

In March 2011, Plaintiff returned, reporting very severe abdominal pain. AR at 283. He received an ultrasound of his right upper quadrant, which showed "diffusely

echodense liver parenchyma suggesting fibrofatty charge." AR at 295. His liver was enlarged as well. AR at 295. Plaintiff was diagnosed with abdominal pain, vomiting, malaise, pallor, dehydration, and metabolic acidosis. AR at 283.

Plaintiff's most recent visit to the Memorial Medical Center emergency department occurred on June 19, 2011. AR at 451. He complained of nausea and vomiting and reported that his symptoms had gotten worse over the past three days. AR at 451, 453. He was diagnosed with chronic abdominal pain, history of gastritis, intractable vomiting, and clinical dehydration, and was prescribed Phenergan for nausea. AR at 457.

The following month, on July 14, 2011, Plaintiff's back was x-rayed at Sun View Imaging Services. AR at 388. The physician's impression included mild lumbar spondylosis and straightening of the lumbar spine. AR at 388.

On July 23, 2011, Plaintiff was examined by consultative examiner Carlos Pastrana, M.D. AR at 390-92. Plaintiff reported that he had arsenic poisoning from 2002 when he was working as a painter. AR at 390. Plaintiff also reported a history of gastritis, chronic abdominal pain, hepatitis C, and nausea. AR at 390. Plaintiff informed Dr. Pastrana that he was vomiting approximately once a week. AR at 390. He said he was able to dress himself and "do household chores like sweeping, mopping, vacuuming, cooking, and washing dishes." AR at 390. He could also stand for five to ten minutes at a time and for a total of four hours in an eight-hour period. AR at 390.

7

Plaintiff further reported that he could sit for three minutes at a time or for a total of four hours in an eight-hour period. AR at 390. Finally, he could walk for half a block, lift five pounds, and drive for 15 minutes. AR at 390.

Dr. Pastrana performed a physical examination of Plaintiff. He found that Plaintiff ambulated well and did not have difficulty getting on and off the examination tale or out of his chair. AR at 391. He found Plaintiff's abdomen to be "[s]oft with diffuse tenderness but no rebound pain." AR at 391. Plaintiff complained of abdominal pain with deep breathing. AR at 391. Dr. Pastrana found that Plaintiff's "lumbar spine had forward flexion of 90° with complaint of abdominal pain." AR at 392.

Dr. Pastrana's impressions were that Plaintiff had a "[q]uestionable and undocumented history of arsenic poisoning," and that "[h]is history is more consistent with chronic hepatitis C infection." AR at 392. He concluded that Plaintiff had abdominal pain with nausea and vomiting, chronic fatigue, and a history of elevated liver function tests. AR at 392. Finally, Dr. Pastrana noted that Plaintiff reported gastritis, but that he may instead be experiencing symptoms of hepatitis C. AR at 392.

A few months later, on September 22, 2011, Dr. Castrejon completed a form assessing Plaintiff's ability to do work-related activities. AR at 394. He found that Plaintiff could occasionally lift less than ten pounds, could stand and walk for less than two hours in an eight-hour workday, could sit for only about two hours in an eight-hour workday, had to change positions every 30 minutes, and would need to lie down

8

on a daily basis at unpredictable intervals during a work shift.  AR at 394-95.  Dr. Castrejon further found that Plaintiff could never climb ladders, and could only occasionally twist, stoop, bend, crouch, climb stairs, kneel, crawl, or balance.  AR at 395.  Plaintiff also had a restricted ability to reach, handle, feel, push, and pull, and his symptoms were affected by extreme cold, extreme heat, wetness, humidity, and hazards.  AR at 395.  Dr. Castrejon additionally noted that Lortab, one of Plaintiff's medications, had precautions for working with heavy equipment, driving, or operating dangerous machinery.  AR at 534.  Finally, Dr. Castrejon opined that Plaintiff's impairments would cause him to be absent from work more than three times a month.  AR at 396.

## IV.   THE ALJ'S DECISION

On June 6, 2012, the ALJ issued a decision denying Plaintiff's application for benefits.  AR at 18.  For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.   If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations."  *Id*. § 404.1545(a)(1).  Second, the ALJ determines the physical and mental demands of claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the

10

national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

Here, in denying Plaintiff's request for benefits, the ALJ applied the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of March 30, 2010. AR at 23. At step two, the ALJ determined that Plaintiff had the following severe impairments: "gastritis, liver damage, hepatitis C, and mild lumbar spondylosis." AR at 23. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR at 24.

At step four, the ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform light work, except that he would be "further limited [to] never climbing ladders/ropes/ scaffolds; occasionally climb[ing] ramps/stairs; avoid[ing] exposure to extreme cold and heat; and avoid[ing] exposure to hazardous [sic] such as unprotected heights and moving machinery." AR at 24. The ALJ further concluded that, in light of the RFC, Plaintiff was capable of performing his past relevant work as a sales clerk and convenience store clerk. AR at 26. At step five, the ALJ found that, in the alternative, Plaintiff could perform jobs existing in significant numbers in the national economy, including as a cashier, a registration clerk, or a telemarketer. AR at 27.

## V. ANALYSIS

Plaintiff claims that the ALJ erred at step four of the analysis by (1) failing to follow the treating physician rule, (2) failing to re-contact the treating physician,[2] and (3) failing to make her own findings about the physical and mental demands of Plaintiff's past relevant work. *Doc. 21* at 4. The Plaintiff also alleges that the ALJ's findings at step five were not based on substantial evidence because the VE identified jobs that required a higher skill level than Plaintiff's prior work. *Doc. 21* at 12.

The Court finds that the ALJ erred in assigning weight to Dr. Castrejon's medical opinion, and will therefore remand this case to the Commissioner for further proceedings consistent with this opinion. Given this error, Plaintiff's other arguments are not addressed in this opinion.

### A. The Commissioner Erred in Evaluating the Opinion of Dr. Castrejon

Plaintiff argues that the Commissioner erred in evaluating the September 2011 opinion of Dr. Castrejon, Plaintiff's treating physician, regarding his ability to perform work-related activities. The ALJ gave "no weight" to this opinion, finding that it was "not supported by Dr. Castelejo's [sic] treatment notes," and commenting that this discrepancy may have resulted from a desire to assist Plaintiff. AR at 26.

The Commissioner counters that the ALJ properly explained her rejection of Dr. Castrejon's opinion as inconsistent with other substantial evidence in the record, when

---

[2] Plaintiff later withdrew this argument in his Reply. *See doc. 23* at 1.

12

the ALJ observed that the doctor's treatment notes "appear to support that the claimant's treatment has been essentially routine and/or conservative in nature . . . ." AR at 26. With respect to the ALJ's comments regarding Dr. Castrejon's motivations, the Commissioner urges that Plaintiff was not prejudiced and, therefore, any alleged error was harmless.

The Tenth Circuit has outlined a two-part analysis for determining the weight to be given a claimant's treating physician's opinions. "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Jones v. Colvin*, 514 F. App'x 813, 817 (10th Cir. 2013). Treating source opinions regarding the nature and severity of a claimant's impairments are to be given controlling weight by an ALJ unless those opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or are "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c).

If, however, an ALJ concludes that the opinion is not entitled to controlling weight for one of the reasons listed above, the second part of the analysis requires that the ALJ then decide what weight to afford the opinion. *Jones*, 514 F. App'x at 818. In making this decision, the ALJ should consider the following factors, which are outlined in 20 C.F.R. § 404.1527(c)(1)-(6):

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the

option and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).

Each of these two steps must be "analytically distinct" from each other. *Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013). In other words, ALJ cannot "collapse[] the two-step inquiry into a single point." *Id.*

Here, the ALJ gave no weight to the opinion of Dr. Castrejon. AR at 25-26. For the foregoing reasons, the Court finds that, although the ALJ properly declined to afford the opinion controlling weight, she failed to perform the second part of the analysis for assigning weight to non-controlling treating source opinions. The Court will therefore remand this case to the ALJ.

1. ***The ALJ did not err in affording Dr. Castrejon's opinion less than controlling weight.***

The ALJ did not commit legal error when she refused to afford Dr. Castrejon's opinion controlling weight because it was inconsistent with other substantial evidence in the record. AR 25-26. A treating source's opinion is inconsistent with other substantial evidence in the record when there is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p, 1996 WL 374188 (July 2, 1996).

14

Dr. Castrejon opined that Plaintiff's impairments resulted in extreme physical limitations such that, *inter alia*, he would not be able to sit or stand for more than two hours during the course of an eight-hour workday, would have to lie down at unpredictable intervals, and would be absent from work more than three times a month. AR at 394-96. The ALJ concluded that these assessments were inconsistent with substantial evidence in the record, namely Dr. Castrejon's own treatment notes. She explained that, throughout Dr. Castrejon's treatment of Plaintiff, he repeatedly copied the same history, stating that Plaintiff's pain was aggravated by certain movements, noting that Plaintiff was "[f]eeling generally well," and finding him "[w]ell nourished and well developed in no acute distress." *E.g.* AR at 320. Notably, these comments indicated only "routine and/or conservative" treatment that was "not consistent" with Dr. Castrejon's opinion regarding Plaintiff's ability to work. AR at 25. The ALJ further observed that Dr. Castrejon's opinion about Plaintiff's ability to work "depart[ed] substantially" from his notes, which had "provided no indication of limitations." AR at 25-26.

The ALJ properly identified evidence in the record that was inconsistent with Dr. Castrejon's opinion regarding Plaintiff's ability to work. Because a reasonable mind could accept this evidence as sufficient to support the ALJ's conclusion, she did not err in declining to afford the opinion controlling weight. *See* SSR 96-2p. Accordingly, the Court will not remand the ALJ's decision on that basis.

15

2. ***The ALJ committed legal error by failing to conduct a separate analysis for assigning weight to non-controlling treating source opinions.***

Plaintiff argues that, even if the ALJ properly declined to afford Dr. Castrejon's opinion controlling weight, she should at least have given it deference.  Additionally, he maintains that, in rejecting Dr. Castrejon's opinion, the ALJ "improperly speculated that the treating physician exaggerated his assessment in order to be an advocate for his patient . . . ." *Doc. 21* at 4.

As explained above, once the ALJ has determined not to afford controlling weight to a treating source opinion, the second part of the analysis requires the ALJ to consider the six factors outlined in 420 C.F.R. § 416.927(c)(1)-(6).  In doing so, "the ALJ must make clear how much weight the opinion is given . . . and give good reasons, tied to the factors specified in the [applicable] regulations for this particular purpose, for the weight assigned.  If this procedure is not followed, a remand is required." *Chrismon*, 531 F. App'x at 900-901.  This second analysis must be separate and distinct from the ALJ's initial analysis declining to give the opinion controlling weight. *Id.* at 900.

Further, whenever "the ALJ rejects [an] opinion completely, he must . . . give specific, legitimate reasons for doing so." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted).  Moreover, "'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments,*

16

*speculation or lay opinion.'"* *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)) (emphasis in original).

> a) *It was not proper for the ALJ to consider Dr. Castrejon's motives*

As an initial matter, Plaintiff is correct that it was improper for the ALJ to consider Dr. Castrejon's supposed desire to help Plaintiff by exaggerating his impairments in the September 22, 2011 work status report. The Tenth Circuit held in *Frey v. Bowen* that an ALJ's statement that a family doctor would tend to advocate for his patient's cause was not "any sort of good cause to reject" the opinion, but rather "a conclusory statement that contradicts our established legal rule . . . ." 816 F.2d 508, 515 (10th Cir. 1987); *see also McGoffin v. Barnhart*, 288 F.3d at 1252.

Here, the ALJ pointed to no evidence in the record that would suggest any bias or motive on behalf of Dr. Castrejon, and even admitted that "it is difficult to confirm the presence of [a doctor's] motives" to assist a patient. AR at 26. Her statements regarding Dr. Castrejon's motives were, therefore, pure speculation and an improper basis on which to reject his opinion.

> b) *The ALJ committed reversible error by improperly merging the two parts of the analysis for assigning weight to treating source opinions*

The Commissioner contends that the ALJ's comments regarding Dr. Castrejon's motivations are not grounds for remand because "Plaintiff was not prejudiced" by them. *Doc. 22* at 5. There is no error if the Court is otherwise able to follow the ALJ's reasoning and the proper legal standards have been applied. *Doc. 22* at 5.

As Plaintiff observes in his Reply, this argument fails because the Commissioner has not established that the proper legal standards were applied in assigning weight to Dr. Castrejon's opinion. Specifically, the ALJ never conducted the second part of the analysis requiring her to consider the six factors outlined in 420 C.F.R. § 416.927(c)(1)-(6) and give good reasons tied to those factors for the weight she afforded to Plaintiff's treating physician's non-controlling opinion. Instead, she improperly conflated the analysis for controlling weight with the analysis for the weight to be given to non-controlling opinions.

The ALJ stated that she afforded Dr. Castrejon's opinion "no weight because it is not supported by Dr. Castelejo's [sic] treatment notes." AR at 26. The Court has already found that inconsistency with treatment notes was a proper basis on which to decline to give the opinion controlling weight. It is true that the ALJ's statements concerning inconsistencies between Dr. Castrejon's opinion and his own treatment notes could potentially be construed as applying to *both* (1) a finding at step one that the opinion is non-controlling, and (2) a basis for assigning the opinion limited weight at step two. In fact, the Commissioner seems to advance this argument, maintaining that "[c]onsistency with the record as a whole is a proper factor to consider in weighting a medical source opinion." *Doc. 22 at 5.* Nonetheless, the Tenth Circuit has specifically stated that the reasoning for finding an opinion non-controlling should be made separately from the ALJ's determination of what weight to assign the opinion. *See*

18

*Chrismon*, 531 F. App'x at 900-01. The ALJ neglected to follow this guidance. Collapsing the two parts of the analysis as she has done here is, therefore, reversible error.

## VI. CONCLUSION

Plaintiff has demonstrated that the ALJ erred in her analysis of Dr. Castrejon's opinion. Accordingly, Plaintiff's Motion to Reverse or Remand is GRANTED, and this case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**